UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CONFEDERATE MOTORS, INC., | ) | |
| | ) | |
| Plaintiff / | ) | |
| Counterclaim Defendant, | ) | CIVIL ACTION |
| v. | ) | NO. 11-10213-JGD |
| | ) | |
| FRANCOIS-XAVIER TERNY, | ) | |
| | ) | |
| Defendant / | ) | |
| Counterclaim Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| HERBERT MATTHEW CHAMBERS, | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

# MEMORANDUM OF DECISION AND ORDER ON CHAMBERS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

July 18, 2011

DEIN, U.S.M.J.

## I. INTRODUCTION

This matter is before the court on "Counterclaim Defendant H. Matthew Chambers' Motion to Dismiss for Lack of Personal Jurisdiction." Docket No. 90. The counterclaim-plaintiff, Francois-Xavier Terny ("Terny"), contends that Chambers consented to this court's jurisdiction by executing a Consulting Agreement as President and Chief Executive Officer of Confederate Motors, Inc. ("Confederate") which provides that any dispute thereunder "shall be brought exclusively in the courts of Massachusetts." For the reasons detailed herein, this court finds that Chambers did not personally consent

to the jurisdiction of the Massachusetts courts, and that he does not have sufficient contacts with the Commonwealth of Massachusetts to permit this court to exercise personal jurisdiction over him. Therefore, Chambers' Motion to Dismiss is ALLOWED.

## II. STATEMENT OF FACTS

The relevant facts are straightforward and are undisputed. Confederate is a publicly-traded corporation engaged in the business of designing and manufacturing handcrafted street motorcycles. Chambers was the President, Chief Executive Officer and Chairman of the Board of Directors of Confederate at all relevant times. According to Terny, beginning in the latter part of 2008, he was courted by Confederate to provide financing to the company pursuant to a private placement memorandum dated November 1, 2008. See, e.g., Docket No. 84 (Counterclaim) ¶ 12. Between December 2008 and September 2009, Terny invested $450,000 in Confederate in exchange for 300,000 shares of company stock. Id. at ¶¶ 24-29.

In April 2009, Terny was appointed to Confederate's Board. Id. at ¶ 32. In September 2009, he entered into a Consulting Agreement with Confederate pursuant to which he received an additional 505,000 shares of the company in exchange for his services. Id. at ¶ 33. The Consulting Agreement contains the following provision:

> Governing Law and Jurisdiction of Disputes. This Agreement shall be construed, interpreted and enforced in accordance with the laws of the State of Delaware and any dispute shall be brought exclusively in the courts of Massachusetts.

Docket No. 1 (Original Complaint) Ex. F at ¶ 13. The Consulting Agreement was signed on behalf of Confederate by Chambers as "President and Chief Executive Officer." It is undisputed that neither of the parties to the Agreement is from Massachusetts, the contract was not negotiated in Massachusetts, and it was not to be performed here. The reference to Massachusetts, according to the parties, seems to have been a typographical error.

Disagreements between Chambers and Terny concerning the operations of the company arose shortly after the execution of the Consulting Agreement. See Docket No. 70-1 (Third Amended Complaint) ¶ 1. The details of these disputes are irrelevant to the present motion, as it is undisputed that none of the parties' communications or actions took place in Massachusetts.

On April 8, 2010, Confederate commenced an action against Terny in the United States District Court for the Northern District of Alabama, Southern Division, where Confederate's principal place of business was located. See Docket No. 1. Therein, Confederate sought a declaratory judgment as to the parties' rights and obligations under their agreements and the corporate documents. On December 13, 2010, based on the forum selection clause in the Consulting Agreement, Terny filed a Motion to Enforce Forum Section Clause seeking to have the Alabama case dismissed, with leave to have Confederate refile it in Massachusetts. Docket No. 76. Confederate unsuccessfully opposed the motion. On January 21, 2010, the Alabama District Court orally denied Confederate's request that the action be dismissed, but granted the alternative relief that

the case be transferred to Massachusetts. This was confirmed by a written order on January 24, 2011. Docket No. 80.

On February 22, 2011, after the case had been transferred to Massachusetts, Terny brought counterclaims against Confederate and Chambers. Docket No. 84. Terny contends therein that this court has personal jurisdiction over Confederate and Chambers based on the forum selection clause in the Consulting Agreement. Id. at ¶ 6. Terny has brought claims of breach of fiduciary duty (Count I), violation of federal securities laws (Count II), violation of blue sky laws (Count III), fraud (Count IV), and negligent misrepresentation (Count V) against both Confederate and Chambers, and is seeking a declaratory judgment (Count VI) in addition to damages. Chambers responded to the counterclaim by filing the instant motion to dismiss for lack of personal jurisdiction. In support of this motion, Chambers has filed an affidavit attesting to the fact that he has no connection to Massachusetts and has not done any business here. Docket No. 91-1.[1]

Additional facts will be provided below where appropriate.

---

[1] While at oral argument Confederate indicated that it would like to take discovery of the issue of Chambers' contacts with Massachusetts, it has not put forth any basis for the need for such discovery or any facts which would indicate that discovery would be more than a fishing expedition. This court sees no grounds for allowing discovery on the jurisdictional issue.

## III. ANALYSIS

### A. Consent to Jurisdiction

"On a motion to dismiss for want of *in personam* jurisdiction, Fed. R. Civ. P. 12(b)(2), the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998), and cases cited. "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the 'prima facie' standard governs its determination." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Thus, to meet its burden, the plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." Id. (quotations and citation omitted). Under this standard, the court will look to the facts alleged in the pleadings and the parties' supplemental filings, including affidavits. Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).

In general, in order to exercise personal jurisdiction over a defendant, the court must find sufficient contacts between the defendant and the forum to satisfy both the state's long-arm statute and the due process clause of the Fourteenth Amendment. Sawtelle, 70 F.3d at 1387; Ticketmaster-New York, Inc., 26 F.3d at 204. "[T]he Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008) (quotations

5

and citations omitted). Accordingly, it is appropriate to dispense with the statutory inquiry and "proceed directly to the constitutional analysis[.]" Id. See also Sawtelle, 70 F.3d at 1388 ("when a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the issue of whether the exercise of personal jurisdiction comports with federal constitutional standards"). In the instant case, however, Terny contends that there is no need to undergo the "conventional long arm analysis" since Chambers allegedly consented to the jurisdiction of the Massachusetts courts by executing the Consulting Agreement. See General Contracting & Trading Co., LLC v. Interpole, Inc., 940 F.2d 20, 22 (1st Cir. 1991). This court disagrees.

Since the requirement of personal jurisdiction is "an individual right, it can, like other such rights, be waived." Lechoslaw v. Bank of Am., N.A., 618 F.3d 49, 55 (1st Cir. 2010) (internal quotation omitted). Thus, "[a] party to a contract may waive its right to challenge personal jurisdiction by consenting to personal jurisdiction in a forum selection cause." Inso Corp. v. Dekotec Handelsges, mbH, 999 F. Supp. 165, 166 (D. Mass. 1998). Confederate is a party to the Consulting Agreement, which provides that all disputes are to be resolved in Massachusetts. Therefore, it appears that Confederate has consented to this court's jurisdiction. See id. at 167 ("contractual stipulation to a particular forum implies consent to personal jurisdiction in that forum."). Nevertheless, the forum selection clause does not bind Chambers personally, since he is not a party to the Agreement. See Leyva v. Benjumea, No. 07-P-1660, 72 Mass. App. Ct. 1117, 2008 WL 4266384, at *1 (Mass. App. Ct. Sept. 19, 2008) (unpub. op.) (corporate founders who signed license

agreement on behalf of the company are not personally bound by the license agreement's choice of law and forum selection clauses).

"It is well established that jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation." LaVallee v. Parrot-Ice Drink Prods. of Am., Inc., 193 F. Supp.2d 296, 300 (D. Mass. 2002) (internal quotation omitted). Rather, the court must ascertain if there is an "independent basis" for exercising jurisdiction. Id. See also Morris v. UNUM Life Ins. Co. of Am., 66 Mass. App. Ct. 716, 720-21, 850 N.E.2d 597, 600-01 (Mass. App. Ct. 2006). Similarly, jurisdiction over individual shareholders of a corporation may not be based merely on jurisdiction over the corporation – "[t]here must be an independent basis for asserting long-arm jurisdiction." Johnson Creative Arts, Inc. v. Wool Masters, Inc., 573 F. Supp. 1106, 1111 (D. Mass. 1983). Here, the mere signing of an agreement on behalf of the corporation does not provide sufficient personal contacts for this court to exert personal jurisdiction over Chambers. See Leyva, supra (where individuals signed a license agreement with a forum selection clause on behalf of the company, and agreement "plainly provides" that it is between two companies, "the license agreement cannot be a basis for the assertion of jurisdiction in Massachusetts" over the individuals).

Terny argues that the fact that Chambers directed the company to enter into the Consulting Agreement which (apparently accidentally) obligated the company to litigate claims relating to the Agreement in Massachusetts is sufficient for this court to have personal jurisdiction over him. This argument is without merit. The record before this

7

court is that Chambers engaged in absolutely no activities here in Massachusetts — nor did he even direct the company to engage in any business here. He did not even direct that the contract be signed in Massachusetts. This is simply not a situation where "active entrepreneurial or managerial conduct in the State where jurisdiction is asserted will cause jurisdiction to attach" to a corporate officer when there is jurisdiction over the company. Kleinerman v. Morse, 26 Mass. App. Ct. 819, 824, 533 N.E.2d 221, 225 (1989).

Finally, Terny tries to analogize the instant situation to one where a party is deemed to have submitted to the jurisdiction of a court by filing suit in that court. See Gen. Contracting, 940 F.2d at 23 (company deemed to have submitted to the jurisdiction of the state where it commenced a lawsuit). This argument ignores the fact that Chambers never commenced suit in Massachusetts. Even assuming that Confederate should have brought its suit against Terny in Massachusetts, and not Alabama, Chambers was not a plaintiff in the suit against Terny. Furthermore, Chambers' dispute with Terny goes beyond their obligations under the Consulting Agreement. In sum, Chambers has not consented to the jurisdiction of this court simply because Confederate has agreed to litigate here.

### B. Specific Jurisdiction

In the absence of Chambers' consent to this court's jurisdiction, this court must determine whether Chambers has maintained "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair

play and substantial justice.'" Int'l Shoe Co. v. Wash. Office of Unemployment, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)). Here, the record establishes that Chambers has no significant contacts with Massachusetts, and there is no basis for asserting jurisdiction over him.

"The accepted mode of analysis for questions involving personal jurisdiction concentrates on the quality and quantity of the potential defendant's contacts with the forum." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal. Solano County, 480 U.S. 102, 109, 107 S. Ct. 1026, 1030, 94 L. Ed. 2d 92 (1987) (quotations and citation omitted).

The court may exercise two types of personal jurisdiction — general or specific. There is no contention here that this court has general jurisdiction over Chambers, which "'exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.'" Mass. Sch. of Law, 142 F.3d at 34 (quoting United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)). Rather, the issue here is whether this court can exercise "specific jurisdiction [which] exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is

9

founded directly on those activities." Id. When this analysis is undertaken in the instant case, it is clear that this court cannot exert personal jurisdiction over Chambers.

Specific jurisdiction "has three distinct components, namely, relatedness, purposeful availment (sometimes called 'minimum contacts') and reasonableness." Adelson v. Hananel, No. 09-2231, — F.3d —, 2011 WL 2698330, at *2 (1st Cir. July 13, 2011) (internal quotation omitted). "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." Phillips Exeter Acad., 196 F.3d at 288. First, the court must decide whether the claim underlying the litigation directly "relates to or arises out of the defendant's contacts with the forum." Id. This "relatedness requirement" "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." Ticketmaster-New York, 26 F.3d at 206. It ensures that the defendant will not be subject to personal jurisdiction unless its contacts with the forum state caused the alleged harm. See id. at 207.

Second, the court must determine whether the defendant's contacts with the forum "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." Sawtelle, 70 F.3d at 1389 (quotations and citation omitted). "[T]he cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." Id. at 1391. Voluntariness exists when a defendant deliberately has engaged in significant activities within the forum, but not when the defendant's contacts with the forum are "random,

fortuitous, or attenuated" or result solely from "the unilateral activity of another party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183-84, 85 L. Ed. 2d 528 (1985) (internal quotations and citations omitted). Foreseeability exists when the defendant's conduct and connection with the forum state is such that the defendant "should reasonably anticipate being haled into court there." Id. at 474, 105 S. Ct. at 2183 (internal quotation and citation omitted).

Finally, if the first two parts of the test for specific jurisdiction are fulfilled, the court must determine whether the exercise of personal jurisdiction is reasonable in light of the so-called "Gestalt factors." Sawtelle, 70 F.3d at 1394. This requires the court to consider "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." Id. Even when the lawsuit arises out of the defendant's purposefully generated contacts with the forum, therefore, the court may decline to exercise personal jurisdiction if doing so would be unreasonable and fundamentally unfair. See Burger King, 471 U.S. at 476-78, 105 S. Ct. at 2184-85; Ticketmaster-New York, 26 F.3d at 209-10.

There is no need for an extended discussion of any of these factors. Here, the only contact Chambers has had with Massachusetts is the fortuitous listing of this state in the

forum selection clause of the Consulting Agreement. As detailed above, while this may be enough to bind Confederate, it is not enough to compel Chambers to litigate here.

None of the challenged conduct took place in Massachusetts, and the Consulting Agreement was neither formed nor breached here. See Adams v. Adams, 601 F.3d 1, 6 (1st Cir. 2010) (in a contract dispute, "we look to whether the defendant's activity in the forum state was instrumental either in the formation of the contract or its breach") (quotations omitted). Moreover, since Chambers is not even a party to the Consulting Agreement, it cannot be said that he should have anticipated being sued in Massachusetts by signing the Agreement, or that he in any way availed himself of the privilege of doing business here. Moreover, this court notes that the parties' dispute goes well beyond the Consulting Agreement and involves issues which have no nexus with Massachusetts at all, such as the parties' conduct relating to Terny's original investments, or their activities as directors.

Terny's principal argument is that it would be inconvenient for him to litigate against the Company in Massachusetts, and Chambers elsewhere. This argument is a bit disingenuous, given that Confederate was more than willing to waive the forum selection clause in the Consulting Agreement. In any event, the situation where there is jurisdiction over a company but not its officers is not uncommon — yet it does not create jurisdiction where none exists. See, e.g., Johnson Creative Arts, Inc., 573 F. Supp. at 1111 (Massachusetts court has jurisdiction over company and one shareholder, but not another shareholder). Any "inefficient burden on the judicial system" or the parties in

litigating in two forums "is insufficient to tip the constitutional balance on the facts of this case." Adelson, 2011 WL 2698330, at *6 (quoting Adelson v. Hananel, 510 F.3d 43, 52 (1st Cir. 2007)).

## IV. CONCLUSION

For the reasons detailed herein, Chambers did not consent to the jurisdiction of the Massachusetts courts, and he does not have sufficient contacts with Massachusetts to support the exercise of this court's jurisdiction over him. Therefore "Counterclaim Defendant H. Matthew Chambers' Motion to Dismiss for Lack of Personal Jurisdiction," Docket No. 90, is ALLOWED.

    / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge