UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CONFEDERATE MOTORS, INC., | ) | |
| | ) | |
| Plaintiff/ | ) | |
| Counterclaim Defendant, | ) | CIVIL ACTION |
| v. | ) | NO. 11-10213-JGD |
| | ) | |
| FRANCOIS-XAVIER TERNY, | ) | |
| | ) | |
| Defendant/ | ) | |
| Counterclaim Plaintiff. | ) | |

## ORDER ON DEFENDANT'S RULE 57 MOTION SEEKING SPEEDY DECLARATION OVER ADVANCEMENT OF FEES

April 19, 2012

DEIN, U.S.M.J

## I. INTRODUCTION

This matter is before the court on Defendant's "Rule 57 Motion Seeking Speedy Declaration Over Advancement of Fees." (Docket No. 122). By his motion, Francois-Xavier Terny ("Terny") seeks a declaration, under Count VI of his Amended Counterclaim "that he is immediately entitled to advancement from Confederate of his costs and fees paid to date in litigating this action, and that any such amounts that are incurred going-forward will similarly be due and owed to him by Confederate upon demand." (Docket No. 122). Terny asserts that he is entitled to advancement based on Delaware law, Del. Code Ann. tit. 8, § 145, and Article Tenth of Confederate's Amended and Restated Certificate of Incorporation. Confederate opposes the motion on the grounds

that Delaware courts allegedly have exclusive jurisdiction over such claims, that Terny's status as a director is disputed, that the claims in this litigation do not relate to Terny's conduct as a director, and that Terny has not established that the fees for which he is requesting advancement are reasonable.  (See Docket Nos. 124, 137).

For the reasons detailed below, Terny's "Rule 57 Motion Seeking Speedy Declaration Over Advancement of Fees" (Docket No. 122) is ALLOWED IN PART and DENIED IN PART.  This court holds that it has jurisdiction over the request for advancement, and that Terny is entitled to an advancement for fees incurred in connection with challenges to his actions as an alleged director of Confederate.  However, a great deal of this litigation, including all of Terny's counterclaims, relate to his status as either a shareholder or an independent consultant.  Therefore, further proceedings are necessary to determine what fees should be reimbursed and advanced, in accordance with this court's order detailed below.

## II.  <u>STATEMENT OF FACTS</u>

"The key question" in a summary advancement action such as this "is whether the plaintiff seeking advancement is facing claims that are subject to his advancement right, a determination that can, in this case and in most cases, be based on a review of the pleadings against him in the actions for which advancement is sought."  <u>Fasciana v. Elec. Data Sys. Corp.</u>, 829 A.2d 160, 167 (Del. Ch. 2003).  <u>See</u> also <u>DeLucca v. KKAT Mgmt., L.L.C.</u>, No. Civ.A. 1384-N, 2006 WL 224058, at * 6 (Del. Ch. Jan. 23, 2006) ("Advancement cases are particularly appropriate for resolution on a paper record"), and cases cited.

Consequently, the facts described herein are derived principally from the Third Amended Complaint ("Compl.") (Docket No. 70) and the First Amended Counterclaim ("CC") (Docket No. 119), with some supplementation with undisputed facts.

Confederate is a publicly traded corporation involved in designing and manufacturing handcrafted street motorcycles.  H. Matthew Chambers was the Chief Executive Officer of Confederate and the Chairman of the Board of Directors.  (See Compl. ¶ 1; CC at Introduction).  According to Terny, in late 2008, Confederate and Chambers contacted him to provide financing for the company in exchange for stock.  (CC ¶ 10). Terny accepted the offer and, as Confederate acknowledges, "[o]n April 16, 2009, Defendant Terny was appointed by the Chairman of the Board, Matt Chambers, to fill a vacant Board of Directors Position[.]"  (Compl. ¶ 1).  By September 2009, Terny had invested $450,000 in exchange for 300,000 shares of stock.  (CC at ¶ 28).

Also in September 2009, Terny and Confederate entered into a Consulting Agreement, pursuant to which Terny acquired an additional 505,000 shares of Confederate stock.  (Id. at ¶ 32).  According to Terny, the Consulting Agreement called for him to "work with the Company to form the distribution channels for all the worldwide retail stores for distribution of the Company's motorcycles, work with the company to decrease the material costs necessary to produce its motorcycles, and such other services to and for the Company as may be reasonably requested from time to time by the Company."  (Id.).

Soon thereafter, disagreements arose between Terny and Chambers regarding Confederate's business operations.  (Id. at ¶¶ 44-49).  In particular, Terny objected to

Chambers' proposal for a new motorcycle line, the appointment of new directors, and the

acceptance of a $750,000 loan to relocate the company to New Orleans, Louisiana.  (Id.).

As a result of this disagreement, on January 5, 2010, Terny sent an email to Chambers,

which stated in relevant part as follows:

> I have no intention to continue working like this, and certainly no
> intention to be part of the plan outlined below ....  I've hence decided
> to quit as a "consultant" (and give back any share), publicly resign as
> Boardmember, and put back my shares on the market to liquidate my
> investment in Confederate.

(Docket No. 1, Ex. D).  Confederate argues that the email constituted Terny's official

resignation from the Board of Directors, which Terny denies.  (CC ¶ 50; Compl. ¶ 1)

Despite this email, on March 12, 2010, Terny was given an agenda for an

upcoming annual Board meeting scheduled to be held on March 16, 2010, along with a

waiver of notice of the meeting for him to sign.  (CC ¶ 52, Ex. B).  Terny attended the

meeting on March 16, 2010, where the parties discussed a new motorcycle line, the

appointment of new directors and a $750,000 loan to relocate to New Orleans, Louisiana.

(Compl. ¶ 1).  According to Confederate, Terny asserted his disapproval of the new plan

and refused to provide his consent, which was needed for the company to move forward.

(Id.).  According to Terny, Chambers refused to listen at the meeting, but rather ranted

and raved at Terny, and the meeting "essentially dissolved without any action" being

taken.  (CC ¶ 57).

By letter dated April 5, 2010, Confederate purported to "confirm and accept in

writing [Terny's] resignation of January 5th, 2010 as director and consultant of

Confederate Motors, Inc. effective as of said date." (Docket No. 1, Ex. E).  A few days later, on April 8, 2010, Confederate commenced this suit against Terny in the United States District Court for the Northern District of Alabama, Southern Division, which was eventually transferred to this court.[1]  (Docket No. 1).  While the litigation was pending, in late April 2010, Terny was sent a notice of an annual shareholder meeting scheduled for May 15, 2010.  (CC ¶ 52).  He was also listed as a holder of 805,000 shares of Confederate stock in the company's 10K which was filed with the SEC and dated May 17, 2010.  (Id.).  It was not until Confederate filed an 8K with the SEC on November 17, 2010, that it was reported to the SEC that Terny had been replaced on the Board.  (Id. ¶ 83).

As described more fully below, Confederate's Amended and Restated Certificate of Incorporation authorizes the company to advance expenses, including attorneys' fees, incurred by present or former directors in defending civil or criminal actions.  (Pl. Ex. 8).[2] Terny has made several demands for payment under this provision, but has not itemized the amounts he is seeking.

## Claims Asserted By the Parties

---

[1]  Suit was commenced in the jurisdiction in which Confederate's principal place of business was located.  The case was transferred to this court on January 24, 2011 due to the forum selection clause in the Consulting Agreement.  (See Docket No. 80).

[2]  Plaintiff filed a number of exhibits with the court on March 5, 2012 as part of its Supplemental Opposition to Terny's Motion.  (Docket No. 137).

Confederate filed its Third Amended complaint on October 29, 2010. In Count I, Confederate is seeking, inter alia, a declaratory judgment as to the parties' "rights, duties, obligations, status, and legal relations . . . under the subject agreements and corporate documents." (Compl. at Count I, prayer for relief ¶ 1). Count II also is for declaratory relief, and seeks, among other things, "an Order outlining the rights of the plaintiff, the proper appointment procedure for directors, and the names of all current and valid director[s] according to the corporate documents, appointments, and agreements." (Compl. at Count II, prayer for relief ¶ 2). In Count III, Confederate alleges that Terny breached the Consulting Agreement, and in Count IV Confederate alleges that Terny's email of January 5, 2010 and its "acceptance" of his resignation constituted an enforce-able contract obligating Terny to remit his shares to Confederate. Confederate has also sought the return of the stock Terny was given under the Consulting Agreement under theories of unjust enrichment (Count V), and fraudulent inducement (Count VI). Finally, in Count VII, Confederate alleges that Terny is liable for fraud because after his resigna-tion as a Board member on January 5, 2010 he held himself out as a Board member of Confederate.

Terny's First Amended Counterclaim raises a number of counts, all of which, with the exception of his claim to advancement of legal fees and expenses, are premised on his status as a shareholder of or consultant to Confederate, and not as a director. Thus, in Count I, he alleges a breach of the fiduciary duty owed to him as a shareholder (CC ¶ 86); in Count II, he alleges a violation of federal securities law in connection with his acquisi-

tion of stock (<u>id.</u> ¶ 90); Count III contains a claim of violation of the blue sky laws relevant to his purchase of Confederate stock (<u>id.</u> ¶ 103); and Count IV, for common law fraud, and Count V, for negligent misrepresentation, relate to actions taken in connection with his acquisition of stock.  (<u>E.g.</u>, <u>id.</u> ¶¶ 107, 118).  In Count VI, Terny is seeking a declaratory judgment in connection with the enforceability of the Consulting Agreement, as well as his right "to recover advancement of his attorneys' fees and indemnification from Confederate to cover any loss that may be incurred as a result of this lawsuit."  (<u>Id.</u> ¶ 121).  Finally, in Count VII, Terny contends that Confederate breached its contract as found in the Certificate of Incorporation "to provide for advancement of his attorneys' fees and indemnification of any loss that may be incurred as a result of a lawsuit that arises out of the fact that such person was a director of the corporation."  (<u>Id.</u> at ¶ 124).

Terny has filed a motion entitled "Rule 57 Motion Seeking Speedy Declaration Over Advancement of Fees from Plaintiff Confederate Motors to Defendant Francois-Xavier Terny."  (Docket No. 122).  Therein he asserts, and Confederate does not dispute, that he has "undertaken to repay all reimbursed costs and fees" if appropriate "consistent with the explicit provisions of Confederate's certificate of incorporation[.]"  (<u>Id.</u>).

Additional facts will be provided below where applicable.

## III.  <u>ANALYSIS</u>

### A.    <u>The Right To Advancement of Expenses</u>

"Section 145(a) and (b) of the Delaware General Corporation Law gives corpora-tions the power to indemnify their current and former corporate officials from expenses

incurred in legal proceedings '*by reason of the fact* that the person is or was a director, officer employee or agent of the corporation.'"  Homestore, Inc. v. Tafeen, 888 A.2d 204, 211 (Del. Supr. 2005) (quoting, with emphasis added, Del. Code Ann. tit. 8, § 145(a) & (b)).  These statutory provisions provide that such expenses, which include attorneys' fees, must be "*actually and reasonably* incurred by the person in connection with such action, suit or proceeding[.]"  Del. Code Ann. tit. 8 § 145(a) (emphasis added). Consequently, a corporate official's right to indemnification is not established "until after the defense to legal proceedings has been successful on the merits or otherwise." Homestore, 888 A.2d at 211 (internal quotation omitted).  In order to provide "corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings[,]" the statutory scheme also allows for the advancement of expenses to the corporate officials.  Id.  Thus, Del. Code Ann. tit. 8, § 145(e) provides in relevant part:

> Expenses (including attorneys' fees) incurred by an officer or director of the corporation in defending any civil, criminal, administrative or investigative action, suit or proceeding *may* be paid by the corporation *in advance* of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation as authorized in this section. Such expenses (including attorneys' fees) incurred by *former* directors and officers ... *may* be so paid upon such terms and conditions, if any, as the corporation deems appropriate.

(Emphasis added).

The right to advancement is considered to be "an especially important corollary to indemnification as an inducement for attracting capable individuals into corporate service." Homestore, 888 A.2d at 211.  Significantly, the rights to indemnification and advancement are "separate and distinct," with the former being dependent on the merits of the claims and the latter being dependent on the scope of the claims asserted against the corporate official, not the merits.  See Ridder v. Cityfed Fin. Corp., 47 F.3d 85, 87 (3d Cir. 1995) ("Under Delaware law, appellants' right to receive the costs of defense in advance does not depend upon the merits of the claims asserted against them, and is sepa-rate and distinct from any right of indemnification they may later be able to establish."). Nevertheless, only those fees which may ultimately be eligible for indemnification may be advanced: a demand for expenses for which indemnification would not be possible would not be reasonable.  See Underbrink v. Warrior Energy Serv. Corp., No. 2982-VCP, 2008 WL 2262316, at *16 & n.148 (Del. Ch. May 30, 2008) (unpub. op.) (while eligible for advancement for some claims, plaintiffs were not entitled to advancement of expenses incurred in defending claims which were not made by reason of their status as directors as indemnification was not possible for such claims), and cases cited.

Although the authority of corporations to advance expenses is permissive under § 145(e), "mandatory advancement provisions are set forth in a great many corporate charters, bylaws and indemnification agreements." Homestore, 888 A.2d at 212 (citation omitted); see also Advanced Mining Sys., Inc. v. Fricke, 623 A.2d 82, 83 (Del. Ch. 1992) (stating "most corporations . . . have by by-law exercised the authority recognized by

Section 145 so as to mandate the extension of indemnification rights in circumstances in which indemnification would be permissible under Section 145"). In the instant case, Confederate's Amended and Restated Certificate of Incorporation, Article Tenth, provides, in relevant part, that the Corporation "shall" "(a) indemnify to the fullest extent permitted by" Delaware law, "any present or former director of the Corporation," for any expenses, including attorneys' fees, which were "actually and reasonably incurred" "by reason of the fact that such person is or was a director" of the Corporation. In addition, in Article Tenth the Corporation further has agreed that it "shall"

> (e) pay expenses (including attorneys' fees) incurred by a *present or former* director ... in defending a civil or criminal action, suit or proceeding *in advance* of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such director or officer is not entitled to be indemnified by the Corporation as authorized in Article TENTH herein[.]

(Pl. Ex. 8) (emphasis added). Thus, unlike § 145(e)'s permissive language, Confederate's Article Tenth provides a mandatory right to advancement.

Under Delaware law, "[a]n advancement action is a summary proceeding." Kaung v. Cole Nat'l Corp., 884 A.2d 500, 509 (Del. Supr. 2005). Unlike proceedings to determine the right to receive final indemnification, the scope of an advancement proceeding "is limited to determining the issue of entitlement according to the corporation's advancement provisions and not to issues regarding the movant's alleged conduct in the underlying litigation." Id. (internal quotation and citation omitted). As

detailed below, applying these principles to the instant case compels the conclusion that

Terny is entitled to the advancement of some of his expenses, although the scope of such

advances will require further development of the record.

### B.   Jurisdiction

As an initial matter, Confederate argues that Delaware law grants exclusive juris-

diction to the Delaware courts to determine whether a party is entitled to advancement.

(Pl. Opp. (Docket No. 124) at 1-2).   Confederate relies on Del. Code Ann. tit. 8, § 145(k)

which provides as follows:

> The Court of Chancery is hereby vested with *exclusive jurisdiction*
> to hear and determine all actions for advancement of expenses or
> indemnification brought under this section or under any bylaw,
> agreement, vote of stockholders or disinterested directors, or
> otherwise.   The Court of Chancery may summarily determine a
> corporation's obligation to advance expenses (including attorneys'
> fees).

(Emphasis added).   However, Confederate has cited no cases, and none have been found,

that hold that § 145(k) divests a federal court of jurisdiction to hear advancement claims.

Rather, § 145(k) was necessary to grant jurisdiction to the Delaware Chancery Court due

to the separation in Delaware between courts of law and equity: "[t]he Court of

Chancery, which exercises jurisdiction over claims at law, did not have subject matter

jurisdiction over indemnification and advancement claims until § 145 was amended."

Westar Energy Inc. V. Lake, 493 F. Supp. 2d 1126, 1140 (D. Kan. 2007), aff'd in part,

rev'd in part on other grounds, 552 F.3d 1215 (10th Cir. 2009).   "Such an intra-state

allocation has no effect on federal litigation, which merged law and equity long ago."

Truck Components Inc. v. Beatrice Co., 143 F.3d 1057, 1062 (7th Cir. 1998) (citing NBD

Bank, N.A. v. Bennett, 67 F.3d 629, 634 (7th Cir.1995)).  Moreover, and without

belaboring the point, "[n]o state may prevent a federal court from exercising jurisdiction

created by Congress."  Truck Components, 143 F.3d at 1061 (citations omitted).

Confederate's contention that only the courts of Delaware may decide an advancement

claim is without merit.

> C. **Scope of Advancements**

> **Terny's Status as a Director**

Confederate argues that Terny's status as a director is at issue, and, therefore, that

any advancement of fees is premature.  (Pl. Opp. (Docket No) 124 at 1-2).  This argument

is unpersuasive.  "Inherent in the very nature of a summary advancement action is the

necessity for the court to act in the face of some factual uncertainty."  Fasciana, 829 A.2d

at 167.  Therefore, "the scope of an advancement proceeding under Section 145(k) of the

[Delaware General Corporation Law] is limited to determining the issue of entitlement

according to the corporation's advancement provisions and not to issues regarding the

movant's alleged conduct in the underlying litigation."  Kaung, 884 A.2d at 509 (internal

quotation and citation omitted).  Here, there is sufficient evidence that Terny served as a

director of Confederate to allow him to seek an advancement of expenses.

Significantly, in the instant case, both Confederate and Terny agree that Terny

served as a director of the company, although there is a factual dispute as to whether he

resigned by his email of January 5, 2010.  However, Confederate argues, since Terny

challenges Chambers' right to unilaterally appoint directors and Chambers unilaterally appointed Terny, if Terny prevails in this litigation, his appointment as a director would be invalid.  (See Pl. Supp. Mem. (Docket No. 137) at 4).  To address the merits of this argument, Confederate suggests that this court treat this case as having been brought under Del. Code Ann. tit. 8, § 225(a), even though "the instant action was not commenced as a § 225 proceeding[.]"  (Pl. Supp. Mem. at 3-4).  That statute provides in relevant part:

> Upon application of any stockholder or director, or any officer whose title to office is contested, the Court of Chancery may hear and determine the validity of any election, appointment, removal or resignation of any director or officer of any corporation, and the right of any person to hold or continue to hold such office[.]

Del. Code Ann. tit. 8 § 225(a).

Confederate's argument is based on a faulty premise and does not invalidate Terny's claim for an advancement.  First of all, the "fact" that Terny challenged Chambers' actions in attempting unilaterally to add Board members after Terny acquired his stock and was on the Board may not be controlling as to Chambers' authority to act before Terny was a major stockholder and at a time when the Board was configured differently — that issue would require further development.  In addition, there is ample evidence, including pleadings filed with this court and filings with the SEC, which confirm Confederate's belief that Terny was appointed to the Board.  Therefore, even if his appointment was somehow defective, it is possible that an argument could be made that the appointment was subsequently ratified.  Finally, Confederate may well believe

that a summary proceeding under § 225(a) is the best way to resolve the parties' dispute, but the bottom line is that it did not bring such an action.  Based on the facts presented to this court, there is sufficient evidence that Terny was a director so that his claim for advancement should proceed.

The parties do dispute if and when Terny resigned from his position as a director. While Confederate argues that Terny's January email constituted his resignation,[3] Terny points to the fact that Confederate continued to treat him as a member of the Board after his email, he attended a Board meeting in March, Confederate did not purport to accept his resignation until April, and the company did not report his "resignation" in filings with the SEC until November — thereby negating any conclusion that he resigned in January, if at all.  This issue does not need to be resolved at this juncture.  First of all, Delaware law and Confederate's Articles of Incorporation provide for advancement of expenses to <u>former</u> directors as well as to those currently holding that position.  In addition, the Delaware legislature has determined that the director's agreement to repay

---

[3] Confederate alleges that Terny's "electronic resignation was proper and it was effective upon receipt" pursuant to Del. Code Ann. tit. 8, § 141.  (Compl. ¶ 39).  That statute provides in part that

> any director may resign upon notice given in writing or by electronic transmission to the corporation.  A resignation is effective when the resignation is delivered unless the resignation specifies a later date or an effective date determined upon the happening of an event or events.

Del. Code Ann. tit. 8, § 141(b).  The issue will have to be resolved by a jury.  The email was not directed to the corporation but rather was to "Matt."  Further, it appears to contemplate actions in the future (e.g., to "publicly resign") and there are facts which indicate that any resignation was not accepted.  Thus, at this juncture, the court cannot find that Terny resigned on January 5, 2010 as a matter of law.

amounts advanced if it is ultimately determined that he is not entitled to be reimbursed provides sufficient safeguard for the corporation in the event of overpayments. <u>See Ridder</u>, 47 F.3d at 87 (obligation to repay eliminates any argument that the merits of a claim should be decided prior to advancements being made).  For present purposes, the record is clear that Terny did, in fact, serve as a director of the company and, therefore, is of the class who qualifies for advancement of fees if the other criteria are satisfied.

### **The Claims Against Terny**

The fact that Confederate has sued Terny for allegedly harming the company does not preclude Terny from receiving advancements.  The "right to advancement does not go away simply because the entity from which advancement is sought is alleging that the [defendant] has committed perfidious acts against it." <u>DeLucca</u>, 2006 WL 224058, at *11.  However, Confederate argues that Terny is not entitled to any advances since he has not been sued as a director, but rather in his capacity as a shareholder or consultant.  (Pl. Opp. at 3).  While this argument may limit the scope of work for which Terny is entitled to advancement, it does not eliminate the right to advancements in their entirety.

Terny is only entitled to seek advancement of those fees incurred in connection with proceedings which are "by reason of the fact" that he was a director of Confederate. <u>See</u> <u>Homestore</u>, 888 A.2d at 214 (recognizing the need for a "nexus or causal connection" between the claim against the officer and "once's official corporate capacity").  In addition, "all contracts providing for the advancement of expenses are implicitly limited to those that are reasonably incurred." <u>Id.</u> at 218 (citation omitted).  Among the

consequences of this limitation is that Terny is only entitled to the advancement of fees for which he ultimately may be entitled to indemnification.  See Underbrink, 2008 WL 2262316, at *6.  Finally, "[a]lthough advancement is generally associated with the defense of claims, there are instances in which affirmative claims, asserted as part of a defensive strategy involving the same dispute, may be funded through advancement." Duthie v. CorSolutions Med., Inc., C.A. No. 3048-VCN, 2008 WL 4173850, at *1 (Del. Ch. Sept. 10, 2008 ) (unpub. op.) (citation omitted).  Applying these principles to the instant case compels the conclusion that while Terny is entitled to advancement of his reasonable legal fees in defense of the claims brought against him as a director, a number of Confederate's claims and Terny's counterclaims clearly are not related to his status as a director, and raise separate factual and legal issues for which he is not entitled to advancement.  See Fasciana, 829 A.2d at 163 (plaintiff only entitled to advancement of fees relating to limited claim brought against him as an agent for the company).

A fair reading of the Complaint establishes that it is based in large part on actions which Terny took in his role as a director.  While Confederate challenges Terny's authority to have taken such actions after his January "resignation," the merit of that position will have to await the trial on the merits.  For present purposes, it is sufficient that there is a nexus between Terny's role as a director and many of Confederate's claims.  For example, Confederate challenges Terny's actions at the March 16, 2010 meeting, which was noticed as a Board of Directors meeting.  (See Compl. p. 2; CC ¶ 52).  Confederate claims that Terny was trying to "deadlock" the company — obviously

referring to actions he took in his official corporate capacity.  (Compl. ¶ 8).  Confederate

also challenges actions Terny took while allegedly "falsely claiming" that he was a

director of the company and all of Count VII, alleging fraud, is based on actions Terny

took while holding himself out as a director.  (Compl. at p. 3, ¶¶ 37-54).  The declaratory

judgment claims (Counts I and II) seek orders relating to the parties' rights and obliga-

tions under "the subject agreements" as well as the "corporate documents."  (See Compl.

Counts I and II).  Finally, in Count IV, Confederate alleges, in part, that Terny breached

his "contract" to resign as a director and to remit his stock to the company.  (See Compl.

¶¶ 21-23).  Thus, there is clearly a nexus between Terny's role as a director and the

claims raised by Confederate in Counts I, II, IV and VII of the Complaint.

On the other hand, there are a number of claims, as well as Terny's counterclaims,

which do not relate to Terny's status as a director, and involve such factually and legally

distinct situations that it would be inappropriate to require Confederate to advance funds

for the defense or prosecution of such claims.  Thus, in Counts III and V of its Complaint,

Confederate alleges that Terny breached the Consulting Agreement by failing to bring in

business (Compl. ¶¶ 16-17); in Count IV, Confederate alleges that Terny breached his

January 5, 2010 agreement to quit as a consultant and give back his shares[4] (id. at ¶¶ 21-

25); and, in Count VI, Confederate claims that Terny fraudulently induced it to enter into

---

[4]  This count raises the issue as to whether Terny resigned as a director and/or as a
consultant.  A jury may find that he resigned one and not the other, or both, or neither position.
This court expresses no opinion as to whether the January 5th email constitutes an enforceable
contract in any respect.

the Consulting Agreement.  (Id. at ¶¶ 31-36).  As detailed above, all of Terny's counter-claims, with the exception of his demand for the payment of expenses, are based on his status as a consultant or shareholder.  This is not a situation where the counterclaims are so entwined with the direct claims that "it is neither practicable nor reasonable to attempt to draw some line" between the two in determining which fees should be advanced. Contrast Duthie, 2008 WL 4173850, at *1 (plaintiffs entitled to advancement of fees necessary to defend against fraud and breach of contract claims, as well as claims in connection with their affirmative contention that public statements concerning such claims constituted defamation).  Rather, the claims are "sufficiently discrete that experienced counsel will know when they are addressing it[.]"  Fasciana, 829 A.2d at 176.

This court acknowledges that as a general statement "[a]dvancement is not the proper stage for a detailed analytical review of the fees, whether in terms of the strategy followed or the staffing and time committed."  Duthie, 2008 WL 4173850, at *2.  More-over, "some level of imprecision will be involved in the retrospective" analysis of which fees are properly advanced.  Fasciana, 829 A.2d at 177.  Nevertheless, given that a large portion of this litigation relates to claims for which Terny is not entitled to recovery, he must review his bills and submit only those that are related to the recoverable claims, in accordance with the order below.

## ORDER

This court adopts the procedure ordered by the Fasciana court, 829 A.2d at 177, and the Duthie court, 2008 WL 4173850, at *2.  Thus, Terny's attorneys shall submit

bills for claimed expenses to counsel for Confederate with enough detail so that Confederate's counsel can determine if the charges are compensable in accordance with this decision.  The bills shall be accompanied by Terny's counsel's sworn affidavit certifying his good faith, informed belief that the identified litigation expenses relate solely to activities relating to those allegations for which Terny is owed advancement, in accordance with this decision.  Terny's subsequent advancement requests shall be submitted in this format as well.

Confederate shall, in turn, identify those fees which it asserts fall outside the scope of appropriately advanced fees, and plaintiff's counsel shall certify by sworn affidavit his good faith belief that the advancement of such fees is not appropriate.

Fees that are not in dispute shall be paid promptly.  If the parties cannot resolve any outstanding dispute, any party may file a motion with this court seeking to have the dispute resolved.  This court shall determine in connection with ruling on any such dispute whether an award of fees to the prevailing party is appropriate.

## IV.  CONCLUSION

For all the reasons detailed herein, the Defendant's "Rule 57 Motion Seeking Speedy Declaration Over Advancement of Fees" (Docket No. 122)  is ALLOWED IN PART and DENIED IN PART.  The parties shall proceed in accordance with the Order detailed herein.

    / s / Judith Gail Dein
Judith Gail Dein

United States Magistrate Judge